UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-01367-FWS-MBK Date: August 31, 2026

Title: Akop Yamalyan v. D. Marin *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Rolls Royce Paschal | N/A |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorneys Present for Petitioner: | Attorneys Present for Respondents: |
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER REJECTING REPORT AND RECOMMENDATION [27]; ORDER DENYING PETITION AS MOOT AND DISMISSING CASE WITHOUT PREJUDICE**

## I. Introduction and Background

Petitioner Akop Yamalyan brings this Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 against Respondents D. Marin, as Warden and Facility Administrator at Adelanto Immigration and Customs Enforcement ("ICE") Processing Center; Thomas P. Giles, Director of the Los Angeles ICE Field Office; Todd Lyons, Acting Director of ICE; Kristi Noem, former Secretary of the Department of Homeland Security ("DHS"); and Pamela Bondi, Attorney General of the United States. (Dkt. 1 ("Petition" or "Pet.").) Petitioner is a citizen of Armenia who has lived in the United States for over 34 years, having arrived to the United States in 1992 as a refugee with his family. (*Id.* ¶¶ 22, 31-33.) He has a 2011 final order of removal which designates Armenia as the country of removal. (*Id.* ¶¶ 3, 22, 34.) At some point (the Petition states 2011 or 2013), when ICE did not effect Petitioner's deportation or removal, Petitioner was placed on an Order of Supervision ("OSUP"). (*Id.* ¶¶ 6, 37.)

Petitioner has complied with the terms of his OSUP for over a decade, working and paying taxes, and ICE has not procured travel documents or effected removal to Armenia. (*See id.* ¶¶ 11-14.) During a scheduled, routine check-in on March 10, 2026, Petitioner was detained, with ICE officers telling Petitioner his OSUP was revoked and that they believed, but were not sure, that they would be able to get travel documents from Armenia. (*Id.* ¶¶ 42-43.) "ICE did not explain why" Petitioner's OSUP was revoked or give him "an opportunity to

respond to those reasons," and on information and belief, Petitioner alleges "the agency had not secured [the] travel document necessary for removal from the [U]nited [S]tates." (*Id.* ¶ 45.)

In the Petition, filed on March 20, 2026, Petitioner alleges that he was re-detained in violation of the due process clause of the Fifth Amendment to the United States Constitution; and in violation of the Administrative Procedure Act; among other violations. (*Id.* ¶¶ 46-109.)

On March 25, 2026, the court granted Petitioner's Application for a Temporary Restraining Order, ordering "Respondents to release Petitioner from custody on or before April 1, 2026, at 1:00 p.m. Pacific Standard Time. . . . on the original OSUP under the terms and conditions existing as if Petitioner had not been detained." (Dkt. 11 ("TRO") at 6 (emphasis omitted).) The court also ordered Respondents to show cause in writing as to why the court should not issue a preliminary injunction. (*Id.* ("OSC").)

In response to the OSC, Respondents advised that "Petitioner was released from immigration detention pursuant to the Court's order on March 26, 2026." (Dkt. 10 ("OSC Response") at 1; Dkt. 10-1 (Order of the Immigration Judge).) Consistent with Respondents' representation in the OSC Response, on April 2, 2026, Petitioner filed a Notice of Change of Address, changing his address from detention in the Adelanto ICE Processing Center to a residence in Van Nuys, California. (Dkt. 15.)

On April 13, 2026, the court denied as moot Petitioner's request for a preliminary injunction, reasoning, "Based on the current record, especially given that the relief granted in the TRO was provided, as applied to the relevant law, including balancing the Winter factors, the court finds Petitioner fails to make an adequate showing that a preliminary injunction is warranted at this time." (Dkt. 17 at 2.) The court referred further proceedings on the merits of the Petition, including the issue of whether the Petition should be dismissed as moot, to the assigned Magistrate Judge. (*Id.* at 3.)

Before the court is the Magistrate Judge's July 29, 2026, Report and Recommendation, which recommends the court grant the Petition and "issu[e] a writ of habeas corpus requiring [Petitioner's] continued release and preventing his re-detention absent a hearing at which the Government shows material changed circumstances justifying his detention." (Dkt. 27 ("Report

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-01367-FWS-MBK Date: August 31, 2026
Title: Akop Yamalyan v. D. Marin *et al.*

and Recommendation") at 9-10.) Based on the record, as applied to the relevant law, and on *de novo* review, *see* 28 U.S.C. § 636(b)(1)(C), the court **REJECTS** the Report and Recommendation and **DISMISSES** the Petition.

## II. Legal Standard

"For a habeas petition to continue to present a live controversy after the petitioner's release or deportation . . . there must be some remaining 'collateral consequence' that may be redressed by success on the petition." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007). "By contrast, where the grounds for habeas relief will not redress collateral consequences, a habeas petition does not continue to present a live controversy once the petitioner is released from custody." *Id.* "Collateral consequences create concrete legal disadvantages." *Alam v. Carter*, 843 F. Appx. 953, 954 (9th Cir. 2021) (internal quotation marks omitted).

"A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries." *United States v. Alder Creek Water Co.*, 823 F.2d 343, 345 (9th Cir. 1987); *see also NASD Disp. Resol., Inc. v. Jud. Council*, 488 F.3d 1065, 1068 (9th Cir. 2007) (finding appeal to be moot when the plaintiffs had already been granted the relief they sought). Courts have an obligation to consider mootness *sua sponte*, and should deny requested relief where it is superfluous. *In re Burrell*, 415 F.3d 994, 997 (9th Cir. 2005). The "basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988).

Based on the record, as applied to the relevant law, the court finds Petitioner's release "does not give rise to collateral consequences that are redressable by success on his original petition." *Abdala*, 488 F.3d at 1065; *see Mejia v. Semaia*, 2025 WL 2633165, *2 (C.D. Cal. 2025) ("[I]f release from custody fully resolves the claims raised in a habeas petition, the claims are indeed moot."). While it is true that Petitioner remains subject to continuing restraints on his liberty under the terms of his bond, the allegations in the Petition reflect that Petitioner was subject to similar restraints *before* his unlawful detention. (*See* Pet. ¶ 6 ("I was last released on an Order of Supervision ('OSUP') on or about 2013.").) In other words, the effect of the relief

granted in the TRO was to put Petitioner in the position he would have been were he never unlawfully detained.

In addition, the court finds that any concern regarding possible future re-detention appears to be "speculative and hypothetical." *Alam*, 843 F.Appx. at 954; *see id.* (holding that the petitioner's release from detention mooted his petition for a writ of habeas corpus and that "[a]ny risk of re-detention does not save his petition from mootness, as he was released pursuant to court order and there is thus a legal impediment to his re-detention"). Accordingly, the court does not find a preventative blanket order prohibiting re-detention absent a pre-deprivation hearing appropriate.

## III. Disposition

For the foregoing reasons, the Report and Recommendation is **REJECTED**. The Petition is **DENIED AS MOOT.** This case is therefore **DISMISSED WITHOUT PREJUDICE**.